***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, and rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner:
 STIPULATIONS
1. Defendant-employer regularly employs three or more employees and was bound by the provisions of the North Carolina Workers' Compensation Act. An employment relationship existed between plaintiff and defendant-employer on November 4, 2000, the date of the admittedly compensable injury by accident.
2. The carrier on the risk for workers' compensation purposes is W. R. Berkley Corporation.
3. Plaintiff is no longer working for defendant-employer.
4. Plaintiff sustained an admittedly compensable injury by accident to his left arm on November 4, 2000. Defendants admitted liability for this injury by accident pursuant to a Form 60 that is dated November 10, 2000.
5. Pursuant to the Form 60, plaintiff has been receiving ongoing temporary total disability compensation benefits at the weekly rate of $293.35. Defendants reduced by 10% plaintiff's average weekly wage and compensation rate, due to an alleged safety violation by plaintiff that led to the compensable injury by accident.
6. The parties stipulated into evidence in this matter the following exhibits: (1) medical records; (2) Industrial Commission forms; (3) employee records; (4) employer handbook; and (5) plaintiff's answers to interrogatories. In addition, defendants introduced and the Deputy Commissioner admitted into evidence the following exhibits: (1) termination report; (2) accident report; (3) employee disciplinary report; and (4) Form 22 and other payroll records.
7. The issues to be determined by the Commission are whether plaintiff sustained a compensable injury to his shoulder in addition to or as a result of the admittedly compensable injury by accident to his left arm; whether plaintiff was terminated on December 19, 2000 due to his misconduct; whether plaintiff reached maximum medical improvement on June 26, 2001 and thereby ended his entitlement to ongoing temporary total disability compensation; and to what, if any, additional indemnity and/or medical compensation is plaintiff owed.
 ***********
Based upon the competent evidence of record herein, the Full Commission finds:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 35 years old and was not working in any capacity for any employer, but was continuing to receive ongoing total disability benefits. Plaintiff completed the tenth grade and is right-hand dominant. Plaintiff's previous work experience consists of physical labor jobs.
2. Plaintiff was hired by defendant-employer on June 14, 2000 as a line operator. This job was a physical job, and required bending and lifting. As part of his job duties as a line operator, plaintiff was required to clean shavings out of a beller.
3. On November 4, 2000 plaintiff was cleaning out shavings from the beller on line number five. Plaintiff bypassed the safety cage on the back of the machine to clean out the beller drain. In so doing, plaintiff had his left arm in the machine. His shirt sleeve thereupon got caught in the machine and was jerked into the machine.
4. As plaintiff's hand and arm were caught in the beller, his left arm was jerked. As a result of the injury by accident, plaintiff suffered a crush injury of the left wrist and forearm, soft tissue contusions, as well as acute carpal tunnel syndrome, and came under the care of Dr. Ferrero. Plaintiff's arm initially was placed in a sugar tong splint, and a week later, on November 11, 2000 plaintiff's left arm was immobilized in a long arm cast with continued use of a sling. The cast was removed December 20, 2000, at which time plaintiff's arm was put in a removal splint and he was instructed to begin working on his range of motion, and was referred to physical therapy. Plaintiff's arm was immobilized for more than six weeks.
5. Plaintiff did not report to the emergency room personnel on the date of the injury or to Dr. Ferrero that his left shoulder was injured in the accident or that his shoulder hurt. The first time plaintiff reported pain in his left shoulder to Dr. Ferrero was on January 10, 2001 and at this time he told Dr. Ferrero that he experienced pain in his shoulder since the date of the injury. Plaintiff sustained a left shoulder injury many years prior to November 4, 2000; however, the injury had resolved and plaintiff was able to work in a full-duty capacity thereafter.
6. While Dr. Ferrero could not testify that plaintiff's left shoulder injury was caused by the injury by accident, he did testify that the machine jerking plaintiff's arm "certainly could" have stressed plaintiff's shoulder, and that plaintiff "certainly could [have] reaggravate[d]" his preexisting shoulder injury when his arm was jerked in the beller. Dr. Ferrero did not think it was unreasonable that plaintiff had not complained of his shoulder pain prior to January 10, 2001, given the fact that he was suffering from and therefore naturally more focused on a much more severe injury to his wrist and hand, and the shoulder aggravation did not manifest itself while plaintiff's arm was immobilized. Plaintiff only began to notice his shoulder pain when the cast was removed and he began to more actively use his arm and shoulder in physical therapy and in his daily course of living.
7. The testimony of both Dr. Ferrero and plaintiff is deemed herein to be credible. Therefore, the Full Commission finds that plaintiff aggravated his preexisting shoulder condition on November 4, 2000 in the course of his compensable injury by accident.
8. An MRI of plaintiff's left shoulder taken in early 2001 revealed a small Hill-Sach lesion in the humeral head, some chondral loss, and anterior and superior labral tears.
9. The aggravation of plaintiff's shoulder condition did not limit or restrict plaintiff's ability to lift or move; but made these movements more uncomfortable. Dr. Ferrero ultimately recommended surgery, which plaintiff had not undergone as of the date of the Deputy Commissioner hearing in the matter. Dr. Ferrero explained that the instability of plaintiff's shoulder was positional and therefore many people choose not to have surgery because they are able to function and avoid that particular position of instability.
10. Dr. Ferrero diagnosed plaintiff's wrist condition as an injury of the triangular fibrocartilage complex on February 2, 2001. Dr. Ferrero treated the wrist condition with injections and additional therapy. As of May 21, 2001 Dr. Ferrero found that plaintiff was at maximum medical improvement of his left wrist injury. However, plaintiff continued to have pain and some limitations on his range of movement. While plaintiff expressed his opinion that pain rendered him unable to work, Dr. Ferrero did not assign work restrictions regarding plaintiff's wrist injury.
11. Dr. Ferrero stated in his deposition that as of plaintiff's last visit on May 21, 2001, plaintiff could not have returned to the workforce without restrictions, based upon his shoulder condition. However, his medical records show that Dr. Ferrero did not have limitations or restrictions in place based upon either plaintiff's left wrist or left shoulder injury. By May 21, 2001, therefore, plaintiff was capable of at least attempting to return to work.
12. Plaintiff was terminated by defendant-employer on December 19, 2000 for misconduct and for reasons unrelated to his workers' compensation claim. On or just prior to that date, plaintiff came to the work site to visit with coworkers, but he was intoxicated when he did so. Plaintiff admitted at the Deputy Commissioner hearing that he was intoxicated and that he knew it was against company policy to come on to company grounds while intoxicated. It is a violation of company policy to enter the work area of defendant-employer's premises unless on duty and scheduled for work.
13. Had plaintiff not been terminated for reasons unrelated to his compensable injury by accident, he could have returned to work for defendant-employer as of May 21, 2001 when he was released to return to work. Plaintiff has not worked or looked for employment since the compensable injury by accident.
14. There is insufficient medical evidence of record from which to prove by the greater weight of the evidence that plaintiff had any disability or loss of wage earning capacity after May 21, 2001 as a result of the compensable injury by accident.
15. On the Form 60 defendants assessed a 10% reduction against plaintiff's average weekly wage and compensation rate due to his alleged safety violation. Company policy provided that an employee could be disciplined for "violation of safety practices which could cause serious injury or death to self or fellow workers." (Page 26 of Southern Pipe 2001 Handbook). The accident report states that plaintiff was injured when he bypassed the safety cage to clean out the beller drain. The Commission finds that there is no evidence in the record that plaintiff's injury was caused by the willful breach of a safety rule adopted by the employer and approved by the Commission and brought to the knowledge of the employee prior to the injury, as required by N.C. Gen. Stat. §97-12(3). Therefore, defendants were not entitled to reduce plaintiff's compensation by 10%.
16. Defendants paid plaintiff benefits at the weekly rate of $293.35. However, neither of the Forms 22 submitted substantiate this figure, with or without a penalty. According to the timesheets and wage records provided, plaintiff worked for defendant-employer for 20 weeks and earned a total of $6,269.70. However, during that 20-week period, there were 2 periods of time that plaintiff did not work seven or more consecutive days. Accordingly, plaintiff's compensation rate of $293.35 is inaccurate and must be recalculated.
17. Based upon the Form 22 wage chart submitted, plaintiff's correct average weekly wage is $348.32, which yields a compensation rate of $232.22. This amount is calculated based upon plaintiff's total wages of $6,269.70 divided by 18, which is the 20 weeks of employment between June 14, 2000 and November 4, 2000, minus two weeks during which he did not work for more than seven calendar days.
18. The record contains no evidence of any permanent partial disability plaintiff may have sustained to his left shoulder as a result of the compensable injury by accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On November 4, 2000 plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer which resulted in an injury to his left wrist and left shoulder. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff was rendered temporarily totally disabled by his compensable left wrist and left shoulder injuries from November 4, 2000 until May 21, 2001. Plaintiff has been paid continuing temporary total disability compensation from November 4, 2001 and continuing to the present. N.C. Gen. Stat. § 97-29.
3. As of May 21, 2000 plaintiff reached maximum medical improvement of his wrist injury with no work restrictions. Although plaintiff had not reached maximum medical improvement as to his left shoulder condition, he could return to work with some restrictions and no doctor had taken him out of work on May 21, 2000 for his shoulder injury. Had plaintiff previously not been terminated from his employment for misconduct and for reasons unrelated to his injuries, work was available and he could have at least attempted to return to work for defendant-employer as of May 21, 2001.
4. As a result of plaintiff's personal conduct on or about December 19, 2000 relating to his employment and not to his compensable injury by accident, plaintiff was terminated for misconduct for which other, nondisabled employees would have been terminated pursuant to the personnel policies. Plaintiff's misconduct is deemed to constitute a constructive refusal of employment, unless he is able to show that his inability to find or hold other employment of any kind is due to the work-related injuries. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996). In this case, when plaintiff last saw Dr. Ferrero on May 21, 2001, there is no medical evidence of record that plaintiff's inability to earn wages in any employment was due to the compensable injuries. Therefore, as of May 21, 2001, plaintiff was no longer entitled to receive disability compensation.
5. As the result of the compensable injury by accident, plaintiff retained a 20% permanent partial impairment to his left hand and is entitled to compensation for 40 weeks at the rate of $232.22 per week. N.C. Gen. Stat. § 97-31(12). This amount is subject to a credit for defendants' overpayments of temporary total disability compensation, but is not subject to the 10% statutory reduction in that defendants failed to prove that plaintiff's injury was caused by his willful breach of any rule or regulation adopted by the employer and approved by the Commission and brought to the knowledge of plaintiff prior to the injury. N.C. Gen. Stat. § 97-12(3).
6. As a result of his compensable wrist and shoulder injuries, plaintiff is entitled to related medical treatment that was or is reasonably necessary to effect a cure, give relief, or lessen the period of his disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants are entitled to terminate plaintiff's temporary total disability compensation as of May 21, 2001. Defendants are entitled to a credit for overpayment of these benefits.
2. Subject to a 25% attorney's fee and defendants' credit above, defendants shall pay compensation to plaintiff at the rate of $232.22 per week for 40 weeks for the 20% permanent partial impairment of his left wrist. This amount shall be paid in a lump sum, with the 25% attorney's fee being paid directly to plaintiff's counsel.
3. Defendants shall provide plaintiff with medical treatment for his left wrist and left shoulder injuries.
4. The issue of plaintiff's permanent partial disability rating to his left shoulder, if any, is reserved for decision pending further medical evaluation. In the event the parties are unable to stipulate to a rating, either party may file a Form 33 request for hearing.
5. Defendants shall bear the costs.
This ___ day of February 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING AND DISSENTING IN PART:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/kjd